Good afternoon. Just barely. May it please the Court, my name is John Foley. I'm appearing for the appellant, GES. It is the position of the appellant that the dismissal of the appellant should be reversed and should proceed to file in the district court. Now, the first question was, did the district court err in determining that GES has no direct cause of action against St. Paul Insurance Company because there was no insurance contract between GES and St. Paul? It's our position, Your Honors, that the stipulation that was entered into in bankruptcy to vacate the state before the trial very specifically directed the appellant, GES, and, of course, the underlying plaintiff, to the policy proceeds of the St. Paul policy. And it was made that we would forbear any attempts to collect against the debtors beyond any insurance coverage available and to liquidate our claims against them. Now, we were clearly that's where we were supposed to look to for satisfaction of any claim. And then they're taking the position that we are a stranger to the policy with the GES's parent company, VEOD. Now, that matter came up late in the game. Actually, the VEOD policy was not discovered until after the good faith settlement proceedings was underway. And then I discovered it, and I called it to the attention of counsel for St. Paul, saying, now, look, you shouldn't be treating us this way. We had these agreements. We had the agreements to look to the policy. We had the other agreement that we would dismiss the cross-claim rather than go ahead with it in the case in chief, prolong the trial, and do all that. We would have the chance to litigate this at a later date. And now here, by this good faith proceedings, you're trying to you're actually breaching these agreements. And you're treating and not only do we have the contracts, but our client's parent has an insurance policy with you. Now, that's as far as that other policy goes. It just means it's a make weight. We're not saying we had a direct right of action on that policy. Now, the so we feel that the stipulations gave us this right to proceed on the policy. Is St. Paul a party to the stipulation? No. The stipulation, your honor, is between power line signed by counsel. So how does that lasso St. Paul? Because their policy is put on the line. The policy is put that we have to direct by other people. Pardon? By other people. I'm not understanding what you're saying. How was it put on the other people put it on stipulated that it's. We did. We were involved in that stipulation. Yeah, but they weren't. St. Paul. When I stipulate that Judge Fletcher owes us some money, does she owe us some money? I mean, I don't quite follow where you're going. Well, we're in a party to the stipulation. Well, St. Paul, first of all, the bankrupt corporation had no assets. Right. The only money in the case from the defense standpoint is this policy, St. Paul's policy. So you put that they are in the case. Is there like a guarantor that they have? What policy are we talking about? There was no policy between St. Paul and G.E.S. There was a policy ensuring power line. There was a policy ensuring power line. And the stipulation specifically puts that policy on the line where the million dollars was, the million dollars of coverage. As between the stipulators. That's what we're one of the stipulators. Who is the other one? The plaintiff's counsel, the underlying plaintiff and the other other defendants. Skytop. There were there were three defendants stipulated and the plaintiff. Everybody in the case stipulated that that's policy. Everybody except St. Paul. Well, St. Paul's policy was put in. Their policy was that was the fund to look for. And now here the situation came up, Your Honor, that this action was initially filed against St. Paul because in our stipulation that we dismissed our cross-claim. Rather than trying our cross-claim, we agreed that we would, we could refile it within six months. So when the six months was coming up, the other case was under appeal to the Nevada Supreme Court. So there couldn't be, couldn't file a suit against power line at that time because that was on appeal. So we filed against St. Paul to preserve that six months statute of limitation. We got in, St. Paul removed it to federal court. They made a motion to dismiss it. Judge Pro denied it. And then we went on, we did a little discovery and then they made a motion to stay it pending the Nevada Supreme Court decision. Well, Nevada Supreme Court decision came down and reversed the joint and several aspect of the of the case entered after the verdict. And also said as far as that good faith settlement that we do not deal with it, it is moot because of our ruling today. So then after that decision came down, the case had been assigned from Judge Pro to Judge Hunt. He called a status conference. We had the status conference and we were lining up a discovery schedule and motion schedule. And I announced at the status conference that I wanted to bring in power line at that point. Because these very questions, can you sue St. Paul alone? Well, I, this was the first time I had a chance to bring power line in. And I had preserved my statute of limitations. So I wanted to file an amended and supplemental complaint. And I filed that with the, with the court. St. Paul responded to that. They objected to the filing that and then they filed a cross motion, counter motion to dismiss the case. And this is the posture of it when Judge Hunt dismissed the case. Now, he does so on two grounds. The direct action, do we have a direct action against St. Paul? I say this, that even if we had, if maybe we didn't have a direct action against St. Paul, that would have been cured by the supplemental, amended and supplemental complaint when we got to that stage of it. Because we have now a power line in there and we can only go against power line as to facts, but we can't go against their assets. So they, both parties belong. And we feel that there was bad faith involved in the case, the way St. Paul acted, because the bankrupt corporation was basically out of this case once the trial was over, because matter of fact, they didn't even have witnesses at the trial. But then it was St. Paul that was running the show. And we feel those acts amount to bad faith on St. Paul's part. Now, let me ask this. When the Supreme Court of Nevada said that this was not going to be joint liability, it was going to be several liabilities, everybody was then on their own. And GES, I guess, had paid its share of the judgment. And then St. Paul settled with power line. How could that affect GES since they, it was several liability, not joint? Well, the time of the settlement, it was joint and several. And that was reversed on appeal. That settlement was designed to let St. Paul satisfy their judgment by paying $600,000 and lending $350,000 to the plaintiffs with the proviso that anything they recovered back from GES, they would be repaid, that they had to be repaid. So when the Supreme Court ruled that the joint and several was wrong, that that ruling was wrong, then it also said the good faith order is moot, or our appeal from the good faith order is moot. I feel this way. We did everything we could to protect ourselves on these ruling, the adverse rulings. And at this point in time, once the Supreme Court had ruled, then it was a matter of do we have a right of contribution and indemnity, which takes us to the next point. Judge Hunt ruled that we didn't. Even if, you know, that was his second point, that we didn't have a right of contribution and indemnity. Now, this we feel, and he said there's res judicata. He was saying the issue was decided in the underlying case by the apportionment of liability of 10% to the plaintiff himself, 25% to GES, and 65% to Powerline. But we submit that's not the law. And we cited this Tycor case at length which says when you have cross claims under the rule, it's the Nevada rule and the federal rule is the same, that they're permissive. And our cross claims, our claims against Powerline were never litigated. You have to take it on a head to head situation, not how various defendants end up when the pie is cut up, between the plaintiff and the whole, and all the defendants. So we feel that, and I think the law is very clear, that that could not become res judicata because we've never had a chance to try those issues. And that's where we think we should go. And as I say, the issue of should St. Paul have been in initially, I had, that's the only person I could sue under the six month stipulation that we'd drawn up. I felt I had to do that. But I think once the Supreme Court had ruled after, and the United States District Court had stated, and the Supreme Court had ruled, that it was proper to go ahead and amend and bring in Powerline. And that's, and I feel that as far as the law is clear, you shouldn't dismiss if the, if there's a cause of action stated, that's also very, very clear. And questions of res judicata, I think is very clear. Let me see if I can clear up my own mind on this. In the jury trial, Powerline was there, GES was there, the plaintiff was there, and the other company, all there. And the jury allocated the responsibility among all the parties. The jury found 10 percent for the plaintiff, 25 and 65. Sky top, they exonerated. So why shouldn't that establish the relative liabilities and that any suit that you would bring against Powerline would be dismissed as res judicata? Well, Your Honor, it was set, that's the way the case was set up to go. But before it went to the jury, it was proposed that we stipulate to dismiss the cross-claim and reserve the claim at a later time. And I think this Tycor case, executive management that we've cited at length in our briefs, points out that there's a vast difference between, in co-defendants of what they're, what they owe the plaintiff, than what they owe each other. You agreed to do that, to postpone? We agreed to, yes, it was stipulated, Your Honor. And was St. Paul part of that stipulation? The same way that the other, they were, it was their attorney that proposed it, and it was his idea, and we went along with it. And we think that's inequitable for them to be, to propose such a stipulation and then try to take advantage of it. What's the point of having a stipulation if you're not going to take advantage of it? Pardon? What is the point of having a stipulation if you're not going to take advantage of it? I don't see the wrongfulness. I don't understand what you're complaining about. Well, what they did, we stipulated that we wouldn't proceed with it. And then the case is over. Now, if we'd proceeded with it, it might well have changed the case. If we are focusing the allegations that we have against Powerline, if we'd gone forward and tried that, that cross-claim, that's what he was seeking to avoid, and we didn't do it. Well, why did you stipulate to that? Why didn't you proceed at that time? Why didn't we go ahead and try it at that time? He proposed it. The case was a long jury trial. And we thought that the best way to do it, and he's saying, why should we fight each other? Why do you want to fight us? You can fight us at a later time if you want to. And that was the agreement. That's where that stipulation came from. That was VIP's agreement. That was Powerline's. Yeah, that was Powerline's. Mr. Albertson, who represented them, he was a St. Paul attorney. Well, he didn't represent St. Paul. St. Paul, he represented the policy. The St. Paul policy was before the court. You've got about four and a half minutes for rebuttal, would you? I'll reserve that to my microphone. May I please have the court? My name is Mike Hall, and I represent St. Paul Fire and Marine Insurance. I think I can be fairly brief. In this case, GES doesn't have any direct right of action against St. Paul. Can you keep your voice up? Sure. GES doesn't have any direct right of action against St. Paul. Mr. Foley concedes that there is no policy of insurance which protects GES in connection with this accident. At this point, the only argument he's making is that this stipulation, as Mr. Foley refers to it, in bankruptcy court, somehow creates rights in favor of GES as against St. Paul. It didn't do anything like that, Your Honors. All the stipulation in bankruptcy did is lift the bankruptcy stay of Powerline and VIP for the limited purpose of allowing all of the claimants who had claims against Powerline to proceed against one asset, which was the insurance company which protects Powerline and VIP. That's what the bankruptcy stipulation did. It certainly didn't create any rights, any insured relationship between GES and St. Paul. For that reason, there's no direct right of action against St. Paul by GES. The other argument that counsel has made is that these other policies of insurance, which were obtained by VIAD well after the accident giving rise to the litigation which took place in state court, that the fact that VIAD obtained those policies then created rights in favor of GES. Of course, that's not true. Those policies of insurance had nothing whatsoever to do with it. If GES had proceeded in suit against Powerline and got a judgment, you'd be on the line for it? Absolutely. If GES obtained a judgment by way of its cross-claim in state court, there's no doubt that the $1 million policy for which the automatic stay was lifted, there's no doubt that those claims, if the claims were in excess of $1 million, those would have been apportioned. So the stipulation allowed GES at a later date to proceed with its cross-claim against Powerline, is that right? The stipulation in bankruptcy court didn't allow that. The stipulation in bankruptcy court didn't contemplate exactly what GES could or could not do. What it did was lift this $1 million liability policy out of the protections of the automatic stay. But there was a stipulation that GES should dismiss its counterclaim. Absolutely. There was a pre-trial stipulation between counsel for GES, counsel for another defendant that was found not liable in the case. But as a part of that, it was agreed that GES could proceed at a later date against Powerline. Absolutely. All the defendants agreed that they could, post-trial, file claims against each other. Those would be stayed pending the outcome of that trial. That was the stipulation. And the argument, of course, that the counsel is making is that in light of that stipulation, he's entitled to proceed now. And I'll tell you why GES is not. Okay. The reason GES can't proceed now by way of amending its complaint to assert claims against Powerline and VIA cannot now proceed against Powerline or VIP Global is that it doesn't have any viable claims. That's in question. It doesn't have any viable claims now. The claims that it asserted, the only claims it asserted was that it had a suitable indemnity. Okay. Let's address contribution first. Contribution only exists in favor of one defendant who is paid more than its allocated share of liability. That hasn't happened here. By virtue of the Supreme Court's ruling, each of the parties is responsible only for its several share. And that amount's already been paid by both parties. So the contribution claim is over with. No party, not GES or anyone, is paid more than their apportioned share of liability. The other claim is for equitable indemnity. And equitable indemnity can't exist here because GES was specifically found to be liable in the state court action. Both of the parties have cited the line of cases of Black & Decker, Piedmont, Medallion. And what those cases say is that the only time a defendant is entitled to equitable indemnity is where the theory against the party seeking equitable indemnity is one that doesn't require any act of negligence. In the examples that they give are defendants who are liable only by virtue of the fact that they were in a chain of distribution. Or they're liable only by virtue of the fact that there was an agency relationship between that defendant and the defendant that was actually negligent. That's not what happened here. Here, a jury, looking at all the evidence, specifically found that GES was 25% at fault. And in view of that finding and that allocation of negligence, there can't be any claim for equitable indemnity. So the fact of the matter is that there's no reason to pursue, they don't have any basis to pursue any claim against Powerline or VIP now because those claims can't have any merit as a matter of law. The other reason they can't pursue it is that that issue was litigated in connection with the challenge to the motion for good faith settlement in front of the Nevada Supreme Court. That was the issue that was being raised before the Nevada Supreme Court. Can Powerline and VIP Global post-trial, can they enter into some kind of agreement that cuts off GES's rights to contribution? Because that's all that a good faith settlement, that's the entire purpose of a good faith settlement motion, is to cut off the rights of contribution. And GES argued just like it does here, hey, they can't enter into that agreement for various reasons. It's contrary to the bankruptcy stipulation, it's contrary to the pretrial stipulation. They made all those arguments before the Nevada Supreme Court. What the Nevada Supreme Court said is exactly what I've said here, is that that issue is now moot. That issue is moot because each party paid it several shares, so we don't even have to address the merits of whether or not the good faith settlement was proper because there's no claims left to be addressed. Okay, thank you. Yeah, thank you. Do you have a little time left for a bottle? I disagree with counsel's interpretation of the Supreme Court order. We had attacked the good faith settlement by a direct appeal. They had determined, the Supreme Court in the joint and several, the motion attacking the good faith settlement is moot. So I don't see how I am bound to say that that good faith settlement is good. It is not good. It's moot as to us because when it's moot, it doesn't affect our rights. And we feel that we are not bound by that good faith settlement. We feel that there's a real, this use of a good faith settlement in this case was, we feel was air. Our statute was used to work on a settlement after a judgment. That good faith settlement statute in the California ones, the California statute says it's before the verdict. Ours doesn't say that. But that's the purpose of these good faith settlements are when you're coming up to trial and you want to be settled and the court takes a look and say, are they paying a fair amount in relation to what their responsibility is? That's before trial. And we feel that this is not a proper use of the good faith settlement to do it after trial as a means of getting a bar against contribution and equitable indemnity. How do you get contribution? The other side says there's no contribution because of the pattern in which this was finally decided. How do you get contribution on what theory? On the equitable theory under that statute, the NRS 17.225, which I have in my appendix, it says the right of contribution exists only in favor of a tortfeasor who has paid more than his equitable share. It's equitable contribution, equitable, those concepts of law. But the apportionment was fixed by percentages. But that's contrary to the statute. The statute says equitable. The statute doesn't apply in this circumstance, it seems to me. Well, again, Your Honor, the question is they fixed that as to the plaintiff. They didn't decide what our rights are against each other. They only decided what is owed the plaintiff. And we're saying, look, we got into this because the way you didn't, you were supposed to get this brace, this truss braced properly. Our people on the ground told you to get proper bracing materials. And they said, don't worry about it, I'll get it, and sent our men home, and then the accident happened. I would like to say this, Your Honor, the Nevada Supreme Court, on our question to amend and our proposition to amend, I wrote a letter on that with a recent case where the Nevada Supreme Court went on at great lengths of why you should grant, and they reversed the judge for refusing the amendment, and even allowed it to be an oral amendment to avoid a dismissal. And we feel that had this case been filed in the first place, in the form it is now, in that supplemental complaint, these questions would have evaporated, respectfully submit the case. Okay. Thank you. The case is argued and submitted. We are adjourned.
judges: B.fletcher, Kozinski, Trott